1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHANH KOUIYOTH,

Petitioner,                           No. 2:04-cv-0662 MCE JFM (HC)

vs.

MATTHEW C. KRAMER,

Respondent.                    FINDINGS & RECOMMENDATIONS

_____/

Petitioner is a state prisoner proceeding pro se with an application for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1997 conviction on
charges of attempted murder, shooting at an inhabited dwelling, shooting a firearm from a motor
vehicle, possession of a firearm by a felon, and enhancements for arming with a firearm and
commission of the crimes for the benefit of a criminal street gang, and the sentence imposed
thereon.

This action is proceeding on eight claims raised in petitioner's first amended
petition, filed September 28, 2005, including the four claims raised in petitioner's original
petition and again in the first amended petition, and claims one, two, four, and five in petitioner's
first amended petition, filed September 28, 2005.  See Findings and Recommendations filed June
11, 2007; Order filed July 24, 2007. The claims before the court are:  (1) actual innocence of the

1

crime of attempted murder; (2) actual innocence of the crime of shooting at the victim; (3) violation of the double jeopardy clause by charging petitioner with two crimes from one act; (4) violation of the so-called Williamson rule by charging petitioner with attempted murder, and shooting at the victim, and shooting at a building; (5) insufficient evidence to support the attempted murder conviction; (6) ineffective assistance of trial counsel for failing to request certain jury instructions and in failing to properly challenge a writ of mandate filed by the government; (7) violation of double jeopardy by sentencing petitioner more severely following a successful appeal; and (8) ineffective assistance of appellate counsel for failing to raise on direct appeal the claim that petitioner received ineffective assistance of counsel for failing to request certain jury instructions, for failing to challenge one of the jury instructions given, and for failing to challenge the omission of another jury instruction.

## FACTS[1]

Thia Lee lived with her eight children and her husband, Chao Vang, in a house in San Joaquin County. On the night of January 27, 1997, Lee heard a disturbance in the backyard. When Vang returned home from work, Lee asked him to check the backyard. When he did so, Vang discovered that some chickens the family was keeping were gone.

The following morning, Vang found footprints and a pager near a broken portion of the fence. A person with a name similar to a misspelling of [petitioner]'s name purchased this pager in February 1996. Vang pushed a button on the pager and a telephone number appeared, which belonged to [petitioner]'s girlfriend. Vang telephoned the number and a male answered the phone.

During the ensuing conversation, Vang told the man that Vang lived where the chickens had been stolen and that he had found a pager. When the man demanded the return of his pager, Vang told him that, if he wanted the pager back, Vang wanted his chickens back. The man told Vang that all his chickens had been "killed and eaten." Vang threatened to destroy the pager. The man told Vang,

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Kouiyoth, No. C028901 (September 26, 2000) (Kouiyoth I), a copy of which is attached as Exhibit D to Respondent's Answer to Petition for Writ of Habeas Corpus, filed October 6, 2004.

if the pager was not returned, there would be a shooting that night and the man would come and kill Vang.

The two men agreed to meet at a school so Vang could return the pager.  Vang went to the designated school and waited for an hour, but no one came.  Soon thereafter, the pager started going off on a regular basis until the evening.  A subsequent investigation disclosed 10 messages stored in the memory of the pager.  The number 187, the Penal Code section for murder, was used in these messages approximately 20 times.

Around 10:30 p.m., Lee and her children were in the kitchen, and all the blinds in the house were closed.  After the children finished their homework, some of them went to bed while everyone else watched television in the living room.  The light in the kitchen remained on, while the living room was dark except for the television.  Not more than five minutes after the family left the kitchen, five shots were fired through the front kitchen window.

Coincidentally, at the same time, two San Joaquin County Sheriff's Department deputies were dispatched to a nearby address on an unrelated call.  As they were driving in the neighborhood, the officers heard what they believed to be shots fired, went to investigate, and saw a car parked on the wrong side of the road.  Deputy Donald Benbrook heard another gunshot and saw a flash coming from the passenger side of the parked car.

Deputy Benbrook engaged the patrol car's lights and siren, and the deputies followed the suspects' vehicle.  A high-speed chase ensued onto Interstate 5, off the freeway, and through a residential neighborhood.  Benbrook noticed the passenger doors of the vehicle were open slightly and feet were hanging out of the car.  The suspects drove back onto the freeway in a northbound direction.

At the county line, the Sacramento County Sheriff's Department and the California Highway Patrol took over the chase, and the suspects' vehicle ultimately was disabled.  Officers surrounded the vehicle and arrested the three occupants -- Sang Soth (the driver of the vehicle), Xarone Xayosa[2] (who was sitting in the back seat), and [petitioner] (who was sitting in the front passenger seat).  Officers found a loaded chrome colored .357 magnum handgun in a plastic bag inside the vehicle's engine compartment.  They did not find a shotgun in the car.

According to Soth, he and [petitioner] had been at a barbecue where chicken was served earlier that day.  Soth saw several guns

---

[2] According to the reporter's transcript, Xayosa's first name actually is Arone.  However, he is referred to as Xarone in other portions of the transcript and by both parties on appeal.

1    at the party, including a three-foot-long shotgun, but he did not
     know to whom the guns belonged.  Soth, Xayosa, and [petitioner]
2    left the party and drove to a residence to pick up a pager.
     Suddenly, Soth heard popping sounds from just outside the car, and
3    he drove away.  He did not know who shot the gun and denied
     telling law enforcement officers that the shooter was sitting in the
4    front passenger seat.

5        Xayosa testified that he, Soth, and [petitioner] left the party to
     buy beer.  After making the purchase, Xayosa, who was in the back
6    seat, became drunk and "fell asleep."  A couple of gunshot blasts
     awakened him.  The shots came from the passenger side of the car,
7    and [petitioner] was sitting in the front passenger seat.  Xayosa
     denied seeing a shotgun in the car.
8
         Officers testified that Soth and Xayosa stated a shotgun was
9    fired from the front right side of the vehicle, which was where
     [petitioner] was sitting.
10
         An investigation revealed ten handgun rounds and three shotgun
11   rounds in the street of an intersection through which the fleeing
     suspects had driven.  Several expended shotgun shells were found
12   along the roadway outside the front of the victims' house, and five
     plastic shotgun wads were found near the victims' front yard.
13   There was no evidence that the house was fired on with a .357
     magnum revolver.
14
         Officer Kevin Hatano, an expert on street gangs, testified as
15   follows:  Soth was a member of a gang called the Original Bloods.
     [Petitioner] and Xayosa were members of the Conway Asian
16   Gangsters, a gang founded sometime before 1992 and comprised of
     22 members at the time of trial.  One of the primary purposes of
17   the gang was the commission of criminal acts.  It is common for
     gang members to gain respect by committing violent acts and then
18   bragging about them.  Drive-by shootings often are done to make a
     statement or to raise the actor's status in the gang.  In 1992,
19   [petitioner] was convicted of burglary.  Xayosa and Soth were
     arrested together for a burglary in 1994.  The same year, Conway
20   Asian Gangster members Binh Kouiyoth and Vong Vue attempted
     to kill a rival gang member.  In Officer Hatano's opinion, the
21   drive-by shooting at Vang's house benefited the Conway Asian
     Gangsters.  Threatening to ruin a pager could be considered
22   disrespectful by gang members, causing them to retaliate.

23   Kouiyoth I, slip op. at 2-6.

24   /////

25   /////

26   /////

                                    4

ANALYSIS

I.  <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

1   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2   habeas court independently reviews the record to determine whether habeas corpus relief is

3   available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4   II.  Petitioner's Claims

5        A.  Actual Innocence

6           In claims one and two of the amended petition, petitioner contends that he is

7   actually innocent of two of the crimes for which he was convicted.  In his first claim for relief, he

8   claims that he actually innocent of the attempted murder of Vang, and in his second claim for

9   relief he claims that he actually innocent of shooting at Vang.  Petitioner presented these claims

10  to the California Supreme Court in a petition for writ of habeas corpus filed in that court on

11  October 16, 2004.  See Lodged Document 19.  The California Supreme Court denied that petition

12  in an order filed August 31, 2005 citing *In re Clark* (1993) 5 Cal.4th 750 and *In re Robbins*

13  (1998) 18 Cal.4th 770, 780.  See Lodged Document 20.  Respondents contend the claims should

14  be denied on the merits.  See Answer to First Amended Petition, filed December 14, 2007, at 12-

15  16.

16          The United States Supreme Court has "assumed without deciding" that it is

17  possible to raise a so- called "freestanding claim of actual innocence" in federal habeas corpus

18  proceedings.  Osborne v. District Attorney's Office for Third Judicial District, 521 F.3d 1118,

19  1130 (9th Cir. 2008) (citing Herrera v. Collins, 506 U.S. 390, 417 (1993)).[3]  "In Herrera, the

20  Supreme Court did not specify what showing would be required for a habeas petitioner to make

21

---

22          [3]  A "freestanding" claim of actual innocence differs from a claim of actual innocence
    raised under Schlup v. Delo, 513 U.S. 298 (1995).  A Schlup claim of actual innocence arises in

23  connection with an attempt to overcome a procedural default as to one or more constitutional
    claims and is raised to show that a failure to consider those claims because of the procedural bar

24  would constitute a "'fundamental miscarriage of justice.'"  Schlup, at 315 (quoting McCleskey v.
    Zant, 499 U.S. 467, 494 (1991).  A Schlup claim "is thus 'not itself a constitutional claim, but

25  instead a gateway through which a habeas petitioner must pass to have his otherwise barred
    constitutional claim considered on the merits.'"  Schlup, at 315 (quoting Herrera, 506 U.S. at

26  404.)

out a successful freestanding claim of actual innocence. The Court stated only that the threshold

would be 'extraordinarily high,' and that the showing would have to be 'truly persuasive.'

Herrera, 506 U.S. at 417 . . .accord id. at 426 (O'Connor, J., concurring)." Carriger v. Stewart,

132 F.3d 463, 476 (9th Cir. 1997) (en banc); see also In re Davis, __ S.Ct. __, 2009 WL 2486475,

slip op. at (Aug. 17, 2009) (Stevens, J., concurring) (citing Triestman v. United States, 124 F.3d

361, 377-380 (2nd Cir. 1997) for proposition that "'serious' constitutional concerns . . . would

arise if AEDPA were interpreted to bar judicial review of certain actual innocence claims.") Cf.

In re Davis, supra, slip op. at 2 (Scalia, J., dissenting) (U.S. Supreme Court has expressed

"considerable doubt that any claim based on alleged 'actual innocence' is constitutionally

cognizable.")  The United States Court of Appeals for the Ninth Circuit has also "assumed that

freestanding innocence claims are possible" and has "articulated a minimum standard: 'a habeas

petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about

his guilt, and must affirmatively prove that he is probably innocent.'" Osborne, at 1130-31

(quoting Carriger, at  476).

### 1. Attempted Murder

In support of his claim that he is actually innocent of attempting to murder Vang,

petitioner presents his own declaration, in which he avers that he and the other occupants of the

car knew that Vang would not be at home when they drove by and shot at the house, and that he

had no intention of shooting Vang or anyone else.  Amended Petition, at 16-17, Declaration of

Chanh Kouiyoth.  Petitioner's declaration falls far short of the "affirmative proof" that he is

actually innocent of the attempted murder of Vang.  The claim should be denied.

### 2. Shooting at the Victim

Petitioner's claim that he is actually innocent of shooting at Vang is based on the

same contentions that support his claim that he is actually innocent of the attempted murder of

Vang:  that petitioner knew Vang would not be home when he drove by and shot at the house.

This claim, too, is without merit.

B.  <u>Double Jeopardy</u>

1.  <u>Charging Petitioner with Two Crimes from One Act</u>

By the fourth claim in the amended petition, petitioner contends that his Fifth Amendment protection against double jeopardy was violated when he was charged with both attempted murder of Vang and with a separate crime of shooting at Vang from a vehicle in violation of California Penal Code § 12034(c).  Petitioner presented this claim to the California Supreme Court in the petition for writ of habeas corpus filed in that court on October 16, 2004, <u>see</u> Lodged Document 19, which, as noted above,  was denied on August 31, 2005 in an order citing *In re Clark* (1993) 5 Cal.4th 750 and *In re Robbins* (1998) 18 Cal.4th 770, 780.  <u>See</u> Lodged Document 20.   Respondents contend the claim should be denied on the merits.  <u>See</u> Answer to First Amended Petition at 16-17.

"The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'"  <u>Brown v. Ohio</u>, 432 U.S. 161, 164 (1977).  Included in the protections of the double jeopardy clause is protection "'against multiple punishments for the same offense.'"  <u>Id.</u> at 165 (quoting <u>North Carolina v. Pearce</u>, 385 U.S. 711, 717 (1969).  The Double Jeopardy Clause "serves principally as a restraint on courts and prosecutors.  The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial."  <u>Brown</u> at 165.   "[T]he established test for determining whether two offenses are sufficiently distinguishable to permit the imposition" of multiple punishments is "' whether each provision requires proof of an additional fact which the other does not. . . .'"  <u>Id.</u> (quoting <u>Blockburger v. United States</u>, 84 U.S. 299, 304 (1932)).

Under California law, attempted murder has two elements:  "(1) the specific intent to commit murder, and (2) a direct but ineffectual act done toward its commission."  <u>People v.</u>

8

1   <u>Koontz</u>, 162 Cal.App.3d 491, 495 (Cal.App. 3 Dist. 1984).  Shooting at a person from a vehicle

2   in violation of California Penal Code § 12034(c) "requires that the perpetrator shoot from inside

3   a vehicle 'at' someone who is not inside the vehicle, and do so willfully and maliciously."

4   <u>People v. Licas</u>, 41 Cal.4th 362, 369 (1997).  Attempted murder requires proof of the specific

5   intent to kill, which is not required to prove a violation of California Penal Code § 12034(c).  A

6   violation of California Penal Code § 12034(c) requires proof of several facts distinct from those

7   required for attempted murder, including shooting a firearm and being inside a motor vehicle.

8   Petitioner's rights under the Double Jeopardy Clause were not violated by his conviction for

9   these two separate offenses.  This claim should be denied.

10              2.  <u>Sentencing</u>

11              Petitioner also claims that his protection against double jeopardy was violated

12   when he received a harsher sentence following a successful appeal.[4]  Respondent contends that

13   there was no violation of double jeopardy and that the claim raises only an issue of state law.

14   The last reasoned state court rejection of this claim is the decision of the California Court of

15   Appeal for the Third Appellate District in <u>People v. Kouiyoth</u>, No. C037866 (Mar. 15, 2002)

16   (<u>Kouiyoth II</u>).  <u>See</u> Ex. J to Answer, filed Oct. 6, 2004.  The state court of appeal set forth the

17   facts relevant to this claim as follows:

18              "A jury convicted [petitioner] . . . of two counts of attempted
            murder, one of which was premeditated (Pen. Code §§ 664/187;
19              counts I, II; further section references are to the Penal Code unless
            specified otherwise), shooting at an inhabited dwelling (§ 246,
20              count III), shooting at another person from a motor vehicle (§
            12034, subd. (c); count IV), being a convicted felon in possession
21              of a firearm (§ 12021, subd. (a), count VIII), and participating in
            criminal conduct by members of a street gang (§ 186.22, subd. (a),
22              count IX).  The jury found that a principal was armed with a
            firearm in the commission of counts I through IV (§ 12022, subd.
23              (a)(1)) and that these offenses were committed for the benefit of a
            criminal street gang (§ 186.22, subd. (b)(1))."

24

25   ───────────────────────

26        [4]  This claim was raised as claim 3 in the original petition and is included in the amended
     petition beginning at page 39 thereof.

1   Based on these convictions, "[petitioner] was sentenced to state prison for life with the possibility of parole, plus a determinate

2   term of sixteen years." Specifically, "[petitioner] received an indeterminate life in prison with the possibility of parole for

3   premeditated attempted murder (count I); a consecutive upper term of nine years for attempted murder (count II), with one year for the

4   armed enhancement and three years for the street gang enhancement; a consecutive term of one year and eight months

5   (one-third the middle term) for shooting at an inhabited dwelling (on count III); a concurrent middle term of six years for shooting

6   from a motor vehicle (count IV); and consecutive terms of eight months each for being a convicted felon in possession of a firearm

7   (count VIII) and participating in criminal conduct by members of a street gang (count IX). The court stayed the armed and gang

8   enhancements on counts I, III, and IV because it had imposed identical enhancements on count II."

9

10  On appeal, we reversed [petitioner]'s convictions for attempted murder (count II) and participating in criminal conduct by

11  members of a street gang (count IX) and remanded the case for resentencing.

12  On remand, the trial court once again imposed an indeterminate term of life in prison with the possibility of parole for the

13  premeditated attempted murder of Vang (count I). This time, however, the court added one year for the armed enhancement and

14  ordered "that the minimum parole date be no less than the 15 years, as set forth in [former] Penal Code Section 186.22, [subdivision]

15  (b) (4)' (now, subdivision (b) (5)) (hereafter former section 186.22(b) (4). The court imposed a consecutive upper term of

16  seven years for shooting at an inhabited dwelling (count III), with the upper term of three years for the street gang enhancement. The

17  court stayed the armed enhancement on count III. The court then imposed a consecutive term of one year eight months (one-third the

18  middle term) for shooting from a motor vehicle (count IV) and stayed both the armed and gang enhancements on that count.

19  Finally, the court imposed a consecutive term of eight months for being a convicted felon in possession of a firearm (count VIII). In

20  total, defendant received an aggregate determinate sentence of 13 years 4 months, to be served prior to his indeterminate life

21  sentence.

22  Kouiyoth II, slip op. at 2-4 (quoting Kouiyoth I). The state court of appeal rejected petitioner's

23  claim that his protection against double jeopardy had been violated on resentencing as follows:

24  [Petitioner] . . . contends the trial court violated the rule against double jeopardy by imposing a 15-year minimum parole eligibility

25  term in connection with count I pursuant to former section 186.22 (b) (4). According to [petitioner], at his original sentencing, the

26  trial court "expressly declined to imposed the 15-year minimum

parole eligibility period set forth in the criminal gang statute for crimes carrying a penalty of life with the possibility of parole." The [petitioner] contends that, by imposing the minimum term at his resentencing, the trial court punished him "more severely for pursuing a successful appeal."

"The prohibition against double jeopardy, California Constitution, article I, section 15, generally prohibits the court from imposing a greater sentence on remand following appeal." (*People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311.) We find no double jeopardy violation here because the minimum term established by former section 186.22 (b) (4) applies automatically in a case such as this, regardless of whether or not the trial court purports to impose the term at sentencing. Thus, [petitioner]'s sentence on remand is no greater than his original sentence in this regard.

Former subdivision (b) (1) of section 186.22 provided: "Except as provided in paragraph (4), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion." Former subdivision (b) (4) provided: "Any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served."

[Petitioner] attempts to characterize the minimum term provided for in former section 186.22 (b) (4) as a sentence enhancement, which the trial court expressly refused to impose at his original sentencing because it had not been properly pleaded. We disagree with [petitioner]'s reading of the record.

As relevant here, the following exchange occurred at [petitioner]'s original sentencing:

"THE COURT: Okay. All right. After the – actually, the defendant is lucky in this regard in the sense that the People could have filed a 186.22(b), I think it is, which would have made the minimum on this 15 years before he's eligible for parole. But instead they filed the 186.22 (b) (1) section, which calls for one, two or three enhancement. And the 186.22 (a) separate charge, which is a 16, two, three crime. So the defendant benefits from that.

"MR. FREITAS [the prosecutor]: No, actually, he doesn't, Your Honor. We filed the (b).

11

"THE COURT:  I didn't see it in here anyplace.

"MR. FREITAS:  It's on page four of the information, line 10.

"MR. HUDSON [defense counsel]:  It's filed I believe as an enhancement.

"MR. FREITAS:  And the California Court of Appeals in the last four months issued an opinion that when it's filed as the (b) (1), the one, two or three enhancement doesn't apply, but it is a 15-to-life enhancement.

"THE COURT:  Well, it may well be that the parole office – parole board of prison terms may look at it that way, but I don't see where you're looking.  It's 186.22 (b) (4) that provides the minimum 15-year parole.  Is that someplace in the Information?

"MR. FREITAS:  That refers back to (b) (1).  It says if the allegations in (b) (1) are, in fact, pled and proved, you then you get 15 to life.

"THE COURT:  Well, I don't know.  I question whether or not –

"MR. FREITAS:  I have the citation.

"THE COURT:  -- without specifically being charged against the defendant –

"MR. FREITAS:  I have the citation back in my office, if the Court wants me to get it.

"THE COURT:  In any event, I think that's up to the Board of Prison Terms, because I don't set parole dates.  But I – I question whether or not that's going to result in a 15-year minimum."

It is clear from the foregoing exchange at [petitioner]'s original sentencing that the trial court did not refuse to impose the 15-year minimum term pursuant to former 186.22 (b) (4).  Instead, the trial court concluded the determination of whether the 15-year minimum term applied was "up to the Board of Prison Terms." We agree with that conclusion.

In *People v. Jefferson* (1999) 21 Cal. 4th 86 (*Jefferson*), our Supreme Court addressed whether a trial court's oral pronouncement of sentence should not have included the minimum term established by former section 186.22 (b) (4).  The court held "it is not improper for the trial court to include, as part of a defendant's sentence, the minimum term of confinement the defendant must serve before becoming eligible for parole" under that statute.  (*Id.* at p. 102, fn. 3.)  As the court went on to explain:

"By including the minimum term of imprisonment in its sentence, a trial court gives guidance to the Board of Prison Terms regarding the appropriate minimum term to apply, and it informs victims attending the sentencing hearing of the minimum period the defendant will have to serve before becoming eligible for parole." (*Ibid*.)

*Jefferson* supports the conclusion that the 15-year minimum term established by former section 186.22 (b) (4) is not a part of the sentence the trial court *imposes* on a defendant but rather a term that applies automatically whenever the prerequisites of the statute are met.  Thus, even when a trial court includes in its oral pronouncement of sentence the minimum term established by former section 186.22 (b) (4), it does not "impose" that term on the defendant but gives "guidance to the Board of Prison Terms regarding the appropriate minimum term to apply . . . ."  (*Jefferson*, *supra*, 21 Cal.4th at p. 102, fn. 3.)

Because the 15-year minimum term is not imposed by the trial court, that 15-year term applied to [petitioner]'s original sentence even though the trial court failed to expressly include the term in its original oral pronouncement of sentence.  Thus, the court's subsequent inclusion of the minimum term in its oral pronouncement at [petitioner]'s resentencing did not subject [petitioner] to a greater sentence.  Accordingly, we reject [petitioner]'s double jeopardy argument.

Kouiyoth II, slip op. at 5-9.

Here, petitioner claims that the protection against double jeopardy guaranteed by the federal constitution was violated on resentencing.[5]  Relying on North Carolina v. Pearce, 395 U.S. 711 (1969), petitioner claims that the sentence imposed on resentencing is more harsh than his original sentence and, therefore, violates double jeopardy.  Petitioner argues that his sentence was more harsh because the trial judge specifically imposed a 15 year minimum term on the life sentence and because the trial judge imposed an additional year for the arming enhancement.

---

[5]  At the outset, the court notes that the claim presented to the state court of appeal appears to rested on the California Constitution and state case law.  See Ex. H to Oct. 6, 2004 Answer.  Thus, it is not clear that petitioner exhausted his federal double jeopardy claim before the state courts.  See Baldwin v. Reese, 541 U.S. 27 (2004) (to satisfy exhaustion requirement state habeas petitioner must alert state court to "federal nature" of claims); see also Duncan v. Henry, 513 U.S. 364, 365-66 (1995).  An unexhausted claim may, however, be denied on the merits.  See 28 U.S.C. § 2254(b)(2).

13

1   "The double jeopardy clause prohibits additions to criminal sentences in a

2   subsequent proceeding where the legitimate expectation of finality has attached to the sentence."

3   Stone v. Godbehere, 894 F.2d 1131, 1135 (9th Cir. 1990) (citing United States v. DiFrancesco,

4   449 U.S. 117, 139 (1980)).  A criminal defendant has no legitimate expectation of finality in a

5   sentence that he has placed in issue by direct appeal where, as here, the sentence is vacated on

6   appeal and the matter is remanded for resentencing.  See Gonzalez v. Knowles, 515 F.3d 1006,

7   1016 (9th Cir. 2008).  Absent a showing of vindictiveness, the double jeopardy clause is not

8   implicated by resentencing following appeal.

9        In North Carolina v. Pearce, supra, the United States Supreme Court held that

10  "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully

11  attacked his first conviction must play no part in the sentence he receives after a new trial" and,

12  therefore, that "whenever a judge imposes a more severe sentence upon a defendant after a new

13  trial, the reasons for his doing so must affirmatively appear."  North Carolina v. Pearce, 395 U.S.

14  at 725-26.  In order for the rule announced in Pearce to apply, there must be a "net increase" in

15  the punishment imposed at resentencing.  See, e.g., United States v. Hagler, 709 F.2d 578, 579

16  (9th Cir. 1983).

17       Here, there was no "net increase" in petitioner's punishment.  His first sentence

18  was a determinate term totaling sixteen years followed by an indeterminate life term.  RT at 873.

19  At resentencing, the trial court imposed a determinate term totaling thirteen years four months

20  followed by an indeterminate term of 15 years to life in prison.  Reporter's Transcript on Appeal,

21  Volume I of I, at 15.  The trial court's order, on resentencing, that petitioner would serve a

22  sentence of 15 years to life on what had previously been an indeterminate life term did not

23  increase petitioner's punishment; by operation of California Penal Code § 186.22 (b) (4),

24  petitioner's minimum term on the original life sentence would have been 15 years in any event.[6]

25  ────────────────

26  [6]  Since its enactment, California Penal Code § 186.22 has included a provision
    precluding parole for a minimum of fifteen years of any individual who violates that section by

14

1      For all of the foregoing reasons, petitioner's claim that his federal constitutional

2   protection against double jeopardy was violated at resentencing is without merit.  The state

3   court's rejection of this claim was not contrary to applicable principles of federal law.  This claim

4   for relief should be denied.

5      C.   Violation of the Williamson Rule

6      In Claim Five of the amended petition, petitioner contends that the trial court

7   violated the rule announced in In re Williamson, 43 Cal.2d 651 (1954) by permitting him to be

8   tried on charges of attempted murder, shooting at a person from a motor vehicle, and shooting at

9   a building from a motor vehicle.  Williamson involved application of

> "the general rule that where the general statute standing alone
> would include the same matter as the special act, and thus conflict
> with it, the special act will be considered as an exception to the
> general statute whether it was passed before or after such general
> enactment. Where the special statute is later it will be regarded as
> an exception to or qualification of the prior general one; and where
> the general act is later the special statute will be considered as
> remaining an exception to its terms unless it is repealed in general
> words or by necessary implication." ( People v. Breyer, 139
> Cal.App. 547, 550 [34 P.2d 1065]; Riley v. Forbes, 193 Cal. 740,
> 745 [227 P. 768].)

16  In re Williamson, 43 Cal.2d at 654.  Petitioner contends that given this rule he could not lawfully

17  be charged, collectively, with attempted murder, shooting at a person, and shooting at a building

18  from motor vehicle, based on a single act.

19      A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

20  some transgression of federal law binding on the state courts, see Middleton v. Cupp, 768 F.2d

21  1083, 1085 (9th Cir.1985), and is unavailable for alleged errors in the interpretation or

22  application of state law, see Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Petitioner's fifth claim

23  for relief is based solely on the interpretation or application of state law and is not cognizable in

24  this federal habeas corpus proceeding.

25  ─────────────────

26  committing a felony punishable by life in prison.  See People v. Lopez, 34 Cal. 4th 1002, 1005-
    1006 (2005).

D.  <u>Sufficiency of Evidence of Attempted Murder of Vang</u>

Petitioner also claims that there was insufficient evidence to support his conviction for the attempted murder of Vang.[7]  Petitioner contends there is no evidence that he intended to kill Vang or that he even knew Vang was at home.  The last reasoned rejection of this claim is the decision of the state court of appeal on petitioner's direct appeal.  The state court rejected the claim as follows:

> "'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . .  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence . . . .  [¶]  Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. . . .  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.'"  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

> To prove an attempted murder charge, there must be sufficient evidence of the intent to commit a murder plus a direct but ineffectual act toward its commission.  (*People v. Chinchilla*, . . . [(1997)] 52 Cal.App.4th [683] at p. 690.)  Because specific intent is a requisite element of an attempted murder charge, the charge may not be based upon implied malice.  (*Ibid.*)  The evidence must demonstrate a deliberate intention to kill a fellow human being unlawfully.

> There rarely is direct evidence of a defendant's intent; rather it usually must be derived from all the circumstances of the attempt, including the defendant's actions.  (*People v. Chinchilla*, *supra*, 52 Cal.App.4th at p. 690.)  However, a specific intent to kill cannot be inferred merely from the commission of a dangerous crime. (*People v. Collie* (1981) 30 Cal.3d 43, 62; *People v. Belton* (1980) 105 Cal.App.3d 376, 380.)  For example, intent to murder cannot be inferred from the commission of the crime of assault with a deadly weapon or arson of an inhabited building.  (*People v. Belton*, *supra*, 105 Cal.App.3d at p. 381.)  "More is needed to

---

[7]  This claim was raised as claim 1 in the original petition and is included in the amended petition beginning at page 21 thereof.

establish murderous intent, which cannot be presumed solely from the commission of some other crime, but which must be affirmatively proved by direct evidence or by solid inference." (*Ibid*.)

. . . .

[Petitioner] also contends there is insufficient evidence that he intended to kill Vang. This is so, he argues, because Vang was not home and there is no evidence that [petitioner] believed Vang was home at the time the shots were fired into the house. [Petitioner] believes that an intent to kill Vang may not be inferred under these circumstances. We disagree.

On the day of the shooting, [petitioner] told Vang there would be a shooting that night and Vang would be killed. Moreover, there is evidence supporting an inference that [petitioner] sent several messages of "187," the Penal Code section for murder, to Vang on the pager in Vang's possession just hours before the shooting. Thereafter, [petitioner] drove to Vang's house and fired five shotgun blasts into the only lighted room in the house. A reasonable inference is that [petitioner] believed this was the only room in use and, therefore, was where he expected Vang to be. Viewed in the light most favorable to the judgment, this evidence supports a finding that [petitioner] intended to kill Vang, attempted to carry out his murderous threats, but was unable to execute his plan because Vang was not home at the time. The fact the evidence also could be viewed as a mere attempt to shoot up Vang's house and scare him does not render the verdict infirm.

Kouiyoth I, slip op. at 13-14.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. 307, 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the

1  conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

2  Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the

3  substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. 307, 324

4  n.16.

5          This court has reviewed the record.  After completion of said review, the court

6  finds that the evidence tendered at trial was sufficient to support petitioner's conviction of the

7  attempted murder of Vang.[8]  The state court's rejection of this claim was neither contrary to nor

8  an unreasonable application of clearly established federal law.  The claim should be denied.

9          E.  Ineffective Assistance of Counsel

10          Finally, petitioner raises two claims of ineffective assistance of counsel.[9]

11  Petitioner argues that both his trial and appellate counsel provided ineffective assistance.  The

12  Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme

13  Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v.

14  Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the

15  circumstances, counsel's performance fell below an objective standard of reasonableness.

16  Strickland, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that are

17  alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The federal

18

19          [8]  As noted above, the state court of appeals made several specific factual findings in its
20  rejection of this claim, including that "[o]n the day of the shooting, [petitioner] told Vang there
    would be a shooting that night and Vang would be killed."  After review of the record, the court
21  finds the evidence sufficient to give rise to an inference that petitioner was the individual who
    threatened to kill Vang during a phone call that Vang placed after finding a pager in his backyard,
22  although there was no direct testimony actually identifying petitioner as the person who made the
    threat.  The state court also found that "[petitioner] drove to Vang's house and fired five shotgun
23  blasts into the only lighted room in the house."  The evidence showed that petitioner was one of
    two passengers in the car from which the shotgun blasts were fired into Vang's house, and gave
24  rise to a reasonable inference that petitioner was the individual who fired the shots.  All of the
    other factual findings made by the state court are fully supported by the record as set forth by that
25  court.

26          [9]  These claims were raised as claims 2 and 4 in the original petition and are included in
    the amended petition at pp. 27-39 and 44-57 thereof.

1  court must then determine whether in light of all the circumstances, the identified acts or

2  omissions were outside the wide range of professional competent assistance.  Id.  "We strongly

3  presume that counsel's conduct was within the wide range of reasonable assistance, and that he

4  exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg,

5  898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

6        Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

7  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

8  unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

9  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

10  see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

11  2000).  A reviewing court "need not determine whether counsel's performance was deficient

12  before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . .

13  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . .

14  . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting

15  Strickland, 466 U.S. at 697).

16        The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

17  v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v.

18  Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  In order to demonstrate prejudice in this context,

19  petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on

20  appeal.  Miller, 882 F.2d at 1434 n.9.

21        1.  Trial Counsel

22        Petitioner contends that his trial counsel was ineffective in failing to request two

23  instructions on lesser included offenses – an instruction on attempted voluntary manslaughter as a

24  lesser included offense of attempted murder, and an instruction on shooting at an uninhabited

25  dwelling as a lesser included offense of shooting at an inhabited dwelling.  Petitioner also

26  contends that his trial counsel was ineffective in failing to challenge an alternative writ of

mandate issued by the state court of appeal reinstating the attempted murder charges after an appeal from a trial court order granting petitioner's motion to dismiss those two charges. Petitioner presented this claim to the state courts in petitions for writ of habeas corpus filed at each level of the state court system.  <u>See</u> Lodged Documents 13, 15 and 17.  The last reasoned rejection of the claim is the decision of the San Joaquin County Superior Court.  <u>See</u> Lodged Documents 14, 16 and 18.  The superior court rejected petitioner's claim that his trial counsel had been ineffective in failing to request the lesser included offense instructions as follows:

> Attempted voluntary manslaughter instruction –
>
> "Murder is the unlawful killing of a human being with malice aforethought.  See Penal Code, section 187, subd. (a).  A defendant who commits an intention and unlawful killing but who lacks malice is guilt of ... voluntary manslaughter.  See Penal Code, section 192, subd. (a).  Generally, the intent to unlawfully kill constitutes malice.  'But a defendant who intentionally and unlawfully kills lacks malice ... **in limited, explicitly defined circumstances:** either when the defendant acts in a 'sudden quarrel or heat of passion', or when the defendant kills in 'unreasonable self-defense' -- the unreasonable but good faith belief in having to act in self-defense.'"  <u>People v. Breverman</u> (1998) 19 Cal.4th 142, 153 (emphasis added).
>
> It is well-established that "[t]he trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.'  'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference.'"  <u>People v. Saddler</u> (1979) 24 Cal.3d 671, 681.
>
> The record reveals no evidence which supports the inference that petitioner shot into the home as a result of a "sudden quarrel" or "heat of passion" or because of an unreasonable but good faith belief that he needed to shoot in self-defense.
>
> Accordingly, trial counsel did not render ineffective assistance by not requesting a jury instruction for attempted voluntary manslaughter.
>
> Shooting into an uninhabited dwelling –

1

> There is no evidence whatsoever to support an inference that the home was not occupied at the time Petitioner shot into it.

2

> Accordingly, trial counsel did not render ineffective assistance by not requesting a jury instruction for shooting into an uninhabited

3

> dwelling.  Petitioner seems to be of the mistaken impression that if he convinced the jury that he believed the home was not occupied at

4

> the time he shot into it, the jury could find it wasn't occupied.

5  Lodged Document 14, <u>In the Matter of the Petition of Chanh Kouiyoth for Writ of Habeas</u>

6  <u>Corpus</u>, Case No. SC061375B, slip op. at 2.

7    The superior court rejected petitioner's claim that his counsel had been ineffective

8  in connection with the alternative writ of mandate as follows:

9

> Again, the record does not support Petitioner's argument.  The argument is moot as to Count 2 because ultimately, the Third

10

> District Court of Appeal reversed Petitioner's conviction on count 2.  With regard to count 1, there is substantial evidence to support

11

> the conviction and so, substantial evidence to support re-instatement of the charge against Petitioner.  Under all the circumstances, trial

12

> counsel's decision not to challenge the alternative writ issues did not fall below an objective standard of reasonableness under

13

> prevailing professional norms.

14  <u>Id</u>. at 2-3.

15    After review of the record, the court finds the state court's findings fully supported

16  by the record and congruent with applicable principles of federal law.  Petitioner's claim that his

17  trial counsel rendered ineffective assistance should be denied.

18    2.  <u>Appellate Counsel</u>

19    Finally, petitioner claims that he received ineffective assistance of counsel when

20  his appellate attorney failed to include in his petition for review to the California Supreme Court

21  two claims raised in the state court of appeal on direct appeal, specifically, claims that the trial

22  court erred in giving an instruction on transferred intent and erred in failing to give a unanimity

23  instruction.  Petitioner presented this claim to the state courts in petitions for writ of habeas

24  /////

25  /////

26  /////

1  corpus filed at each level of the state court system.  See Lodged Documents 13, 15 and 17.  There

2  is no reasoned rejection of this claim.  See Lodged Documents 14, 16, and 18.[10]

3  On direct appeal, the California Court of Appeal granted relief to petitioner on his

4  claim that the trial court had erred in giving an instruction on transferred intent.  The court found

5  that the error had been prejudicial with respect to the charge of attempted murder of Vang's wife

6  and the armed and street gang enhancements imposed on that count and reversed the conviction

7  on that count and the enhancements and remanded the matter for resentencing.  See Kouiyoth I,

8  slip op. at 6-11.  Petitioner obtained relief on this claim in the court of appeal, and there was no

9  remaining basis in the record to raise the claim in the California Supreme Court.  This aspect of

10  petitioner's claim of ineffective assistance of appellate counsel is without merit.

11  The state court of appeal rejected petitioner's claim that the trial court had erred in

12  failing to give a unanimity instruction, as follows:

13  [Petitioner] asserts that his conviction for being a convicted felon
in possession of a firearm (§ 12021) and the jury finding that a

14  principal was armed in the commission of counts I through IV (§
12022) could have been based on his possession and use of either

15  the shotgun or the .357 magnum.  He notes there was evidence that
the .357 magnum found in the engine compartment of Soth's car

16  belonged to Soth, thus providing [petitioner] with a defense
regarding his possession of that gun.  Hence, [petitioner] argues, the

17  trial court erred in failing to give CALJIC No. 17.01, a unanimity
instruction.

18

19  The California Constitution guarantees the right to a unanimous
jury verdict in criminal cases.  (Cal Const., art. I, § 16; People v.

20  Jones (1990) 51 Cal.3d 294, 321.)  "'[W]hen the accusatory
pleading charges a single criminal act and the evidence shows more

21  than one such unlawful act, either the prosecution must select the
specific act relied upon to prove the charge or the jury must be

22

23  [10]  Petitioner also claims that his appellate attorney was ineffective for failing to raise on
direct appeal his claim that trial counsel was ineffective in failing to request jury instructions on

24  lesser included offenses.  It is not clear that petitioner presented this claim to the state courts, but
the claim may be denied even if it is unexhausted.  See 28 U.S.C. § 2254.  For the reasons

25  discussed in section IIE1, supra, petitioner's claim of ineffective assistance of trial counsel is
without merit.  Moreover, the claim was considered by the state courts on habeas corpus review.

26  A fortiori, petitioner's claim that his appellate attorney rendered ineffective assistance in failing
to raise this claim on direct appeal is without merit.

instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act.' [Citation.]"  (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850.)

Where there is no possibility of juror disagreement, a unanimity instruction may not be required or at least its absence will be deemed harmless error.

The failure to give a unanimity instruction is governed by the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711], i.e., whether the error is harmless beyond a reasonable doubt.  (*People v. Thompson*, *supra*, 36 Cal.App.4th at p. 853.)  "Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless. . . . Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless."  (*Ibid.*, citation omitted.)

There is no evidence that a .357 magnum was used to shoot at Vang's house; all the evidence indicated a shotgun was used.  In fact, given that [petitioner] and his accomplices were caught in the act of committing the offenses to which the section 12022 enhancements pertained, and that they were immediately pursued by law-enforcement officers and did not have the opportunity to place the .357 magnum in the bag in the engine compartment, it was not possible for that firearm to have been used in shooting at Vang's house.  In his argument to the jury, the prosecutor did not assert that [petitioner] used the .357 magnum to commit counts I through IV or that he was armed with this firearm; the prosecutor simply paraphrased the trial court's instruction explaining that a firearm included a shotgun or handgun.  The prosecutor repeatedly stated a shotgun was used to commit the crimes.  In their verdicts, the jurors expressly found that a principal was armed with a 12-gauge shotgun in the commission of counts I through IV.

Thus, the state of the evidence, the prosecutor's argument to the jury, and the verdict forms disclose that the jury must have agreed unanimously that whoever fired the shots at the house was armed with a shotgun.

Furthermore, all of the evidence showed it was [petitioner] who fired the shotgun.  The prosecutor argued that [petitioner] was the person who shot at the house, that [petitioner] used a shotgun and, thus, that [petitioner] was in possession of the shotgun.  The

/////

1            prosecutor did not argue that [petitioner] possessed the handgun
hidden in the engine compartment.

2

3             Accordingly, the unanimity instruction was unnecessary because
the prosecutor in effect made an election to rely solely on the
shotgun to support the possession charge.

4

5 Kouiyoth I, slip op. at 14-16.

6            After review of the record, this court finds that petitioner has failed to demonstrate

7 either that his appellate attorney's decision not to include this claim in the petition for review to

8 the California Supreme Court fell outside the bounds of reasonably competent professional

9 assistance or that there is a a reasonable likelihood that the California Supreme Court would have

10 reversed the state court of appeal's denial of this claim had counsel included it in the petition for

11 review.  This claim should be denied.

12            For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

13 petitioner's application for a writ of habeas corpus be denied.

14            These findings and recommendations are submitted to the United States District

15 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

16 days after being served with these findings and recommendations, any party may file written

17 objections with the court and serve a copy on all parties.  Such a document should be captioned

18 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

19 failure to file objections within the specified time may waive the right to appeal the District

20 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21 DATED: September 1, 2009.

22

23                            UNITED STATES MAGISTRATE JUDGE

24

25 12;koui0662.157

26